UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LINCOLN ANDERSON WATKINS,

                Petitioner,

v.                                CASE NO. 16-11348
                                HON. DENISE PAGE HOOD

JEFFREY WOODS,

                Respondent.
_____/

## OPINION AND ORDER GRANTING
## THE STATE'S MOTION TO DISMISS [Docket No. 8],
## DENYING PETITIONER'S MOTIONS
## FOR APPOINTMENT OF COUNSEL [Docket No. 2],
## FOR AN EVIDENTIARY HEARING [Docket No. 3],
## AND FOR SUMMARY JUDGMENT [Docket No. 10],
## DISMISSING THE HABEAS PETITION [Docket No. 1],
## DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY,
## AND GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS*

This matter has come before the Court on petitioner Lincoln Anderson Watkins' *pro se* habeas corpus petition under 28 U.S.C. § 2254 and respondent Jeffrey Woods' motion to dismiss the habeas petition as untimely. Also pending before the Court are Petitioner's motions for appointment of counsel, for an evidentiary hearing, and for summary judgment. Because the Court agrees with Respondent that Petitioner's habeas petition is time-barred, Respondent's motion will be granted and Petitioner's motions will be denied.

# I. BACKGROUND

## A.  The Charges, Trial, and Sentence

Petitioner was charged in Wayne County, Michigan with five counts of first-degree criminal sexual conduct, *see* Mich. Comp. Laws § 750.520b(1)(a) (sexual penetration of a person under thirteen years of age), and one count of second-degree criminal sexual conduct, *see* Mich. Comp. Laws § 750.520c(1)(a) (sexual contact with a person under thirteen years of age).  Petitioner's first two jury trials in Wayne County Circuit Court ended in mistrials.  At his third jury trial,

> the victim, then 15 years old, testified that she had known Watkins all her life, having lived next door to him and having occasionally babysat one of his children.  She also stated that she was good friends with Watkins's wife, whom she considered her godmother.  She considered Watkins her boyfriend.  According to the victim, when she was 12 years old, Watkins approached her at a Memorial Day gathering and showed her sexually explicit images that were on his cell phone.  She claimed that Watkins touched her breasts the next time she babysat and penetrated her vaginally the day after that.  This conduct allegedly occurred consensually for the next couple of weeks.  Sometime thereafter, when the victim arrived to babysit, she declined Watkins's request to engage in sexual activity because she was menstruating.  She testified that Watkins's insistence disturbed her and she thought he might rape her.  She told her mother what had happened.  Although the victim did not want to get Watkins in trouble, she agreed to speak with the police.
>
> The trial court allowed EW to testify regarding other-acts evidence under MCL 768.27a.  According to EW, about 10 years earlier, when she was 15 years old, she had often babysat Watkins's oldest child.  She testified that, during one visit, Watkins led her upstairs by the hand.  He allegedly began kissing her, and their interactions culminated in sexual penetration.  According to EW, their sexual

relationship      lasted      a      couple      of      years.

Watkins did not take the stand or call any witnesses.  Defense counsel argued that the witnesses lacked credibility because their statements were inconsistent and uncorroborated.

*People v. Watkins*, 491 Mich. 450, 460–61; 818 N.W.2d 296, 301 (2012).

On March 10, 2009, the jury acquitted Petitioner of one count of first-degree criminal sexual conduct, but found him guilty of four counts of first-degree criminal sexual conduct and one count of second-degree criminal sexual conduct. On March 26, 2009, the trial court sentenced Petitioner to concurrent terms of twenty-five to forty years in prison for each of the first-degree convictions and ten to fifteen years in prison for the second-degree conviction.

## B.  The Direct Appeal and Post-Conviction Proceedings

On appeal from his convictions, Petitioner argued that (1) his double jeopardy rights were violated because the prosecutor's misconduct precipitated a mistrial, (2) Mich. Comp. Laws § 768.27a violates the presumption of innocence and unconstitutionally infringes on the Michigan Supreme Court's authority, and (3) his due process rights were violated when the trial judge failed to hold an evidentiary hearing to determine the scope of EW's testimony.  The Michigan Court of Appeals rejected these claims and affirmed Petitioner's convictions in an unpublished decision.  *See People v. Watkins*, No. 291841 (Mich. Ct. App. Oct. 5,

2010).  On June 8, 2012, the Michigan Supreme Court affirmed the judgment of the Court of Appeals, *see Watkins*, 491 Mich. at 450; 818 N.W.2d at 296,[1] and on July 26, 2012, the state supreme court denied Petitioner's motion for rehearing. *See People v. Watkins*, 492 Mich. 859; 817 N.W.2d 111 (2012) (table).[2]

On January 24, 2013, Petitioner filed a motion for an evidentiary hearing based on newly discovered evidence (the transcript of a hearing held on July 11, 2006).  He claimed that the transcript would show he was innocent and that the victim's father lied at trial.  The trial court treated Petitioner's motion as a motion for new trial and then denied the motion for lack of merit in Petitioner's arguments. *See People v. Watkins*, No. 06-008116-01-FC (Wayne County Cir. Ct. Feb. 21, 2013).

Petitioner appealed the trial court's decision without success.  The Michigan Court of Appeals denied leave to appeal for failure to establish entitlement to relief under Michigan Court Rule 6.508(D).  *See People v. Watkins*, No. 316010 (Mich. Ct. App. Oct. 30, 2013.)  The Court of Appeals subsequently re-issued its decision at Petitioner's request.  *See People v. Watkins*, No. 316010 (Mich. Ct. App. Feb. 27, 2014).

---

[1]  Justice Marilyn J. Kelly filed a dissenting opinion in which Justices Michael F. Cavanagh and Diane M. Hathaway concurred.

[2]  Justices Michael F. Cavanagh, Marilyn J. Kelly, and Diane M. Hathaway voted to grant rehearing.

4

On November 25, 2014, the Michigan Supreme Court likewise denied leave to appeal under Rule 6.508(D), *see People v. Watkins*, 497 Mich. 903; 856 N.W.2d 38 (2014) (table), and on May 28, 2015, the Michigan Supreme Court denied reconsideration.  *See People v. Watkins*, 497 Mich. 1031; 863 N.W.2d 45 (2015) (table).  Petitioner then filed a petition for the writ of certiorari in the United States Supreme Court.  On February 29, 2016, the Supreme Court denied the application. *See Watkins v. Michigan*, 136 S. Ct. 1174 (2016).

**C.  The Habeas Petition and Pending Motions**

On April 4, 2016, Petitioner signed and dated his habeas corpus petition, and on April 8, 2016, the Clerk of the Court filed the petition.[3]  The grounds for relief

---

[3]  The Court considers the filing date to be April 4, 2016, because

> [u]nder the prison mailbox rule, a habeas petition is considered filed when the prisoner provides the petition to prison officials for filing. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002) (citing *Houston v. Lack*, 487 U.S. 266, 273, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988)).

*Keeling v. Warden, Lebanon Corr. Inst*., 673 F.3d 452, 456 (6th Cir. 2012).

> Cases expand the understanding of this handing-over rule with an assumption that, absent contrary evidence, a prisoner does so on the date he or she signed the complaint.  *See, e.g., Goins v. Saunders*,  206 Fed. Appx. 497, 498 n. 1 (6th Cir. 2006) (*per curiam*) ("[W]e treat the petition as filed on the date [the prisoner] signed it."); *Bomer v. Bass*, 76 Fed. Appx. 62, 63 (6th Cir. 2003) (order); *Towns v. United States*, 190 F.3d 468, 469 (6th Cir. 1999) (order).

*Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008).

set forth in the petition allege that: (1) Petitioner's rights under the double jeopardy clauses were violated because the prosecutor's misconduct precipitated a mistrial; (2) Petitioner's due process and equal protection rights were violated when the trial judge failed to hold an evidentiary hearing to determine the scope of EW's testimony; (3) the trial court failed to hold a hearing and to apply Michigan Rule of Evidence 403 to ensure that EW's testimony was not admitted in evidence; (4) the trial court's failure to hold a hearing to determine what part of EW's testimony was admitted resulted in an improper jury instruction being read to the jury; (5) admitting EW's testimony without applying Michigan Rule of Evidence 403 violated Petitioner's right to a fair trial; (6) Mich. Comp. Laws § 768.27a violates the fundamental right to the presumption of innocence and unconstitutionally infringes on the Michigan Supreme Court's authority; (7) withholding the July 11, 2006 transcript violated Petitioner's right to pursue an appeal of right; (8) withholding the July 11, 2006 transcript caused Petitioner's lawyer to become ineffective; (9) the prosecutor's misconduct, including the withholding of evidence, deprived Petitioner of a fair trial; (10) Petitioner's right to confront his accuser and his right to present a defense were violated by the state district court clerk's statement that no testimony was given on July 11, 2006; (11) withholding the July 11, 2006 transcript violated Petitioner's rights to due process

6

and equal protection of the law; and (12) *Brady* applies where the State repeatedly denied that the July 11, 2006 transcript existed.

In his motion for appointment of counsel, which Petitioner filed with his habeas petition, he seeks a trained attorney to assist him in investigating these issues and bringing them before the Court. In his motion for an evidentiary hearing, also filed with the habeas petition, Petitioner alleges that a hearing is needed to determine what the victim's father revealed to the prosecutor on the matter of the father's pretrial conversations with Petitioner, what the prosecutor knew about the July 11, 2006 transcript, and how defense counsel would have used the transcript at trial.

Respondent argues in his motion to dismiss the habeas petition that the petition is barred by the one-year statute of limitations for habeas petitions filed under 28 U.S.C. § 2254. Petitioner argues in a combined motion for summary judgment and answer to Respondent's motion that his petition is timely and that he is innocent and entitled to equitable tolling of the statute of limitations. Petitioner contends that Respondent failed to file the July 11, 2006 transcript, downplayed Petitioner's claim of actual innocence, and failed to inform the Court of the State's role in impeding his ability to file his petition.

7

## II.  DISCUSSION

### A.  The Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) established a one-year period of limitation for state prisoners to file their federal habeas corpus petitions.  *Wall v. Kholi*, 562 U.S. 545, 550 (2011) (citing 28 U.S.C. § 2244(d)(1)); *Holbrook v. Curtin*, 833 F.3d 612, 615 (6th Cir. 2016) (citing § 2244(d)(1)).  The limitations period runs from the latest of the following four dates:

> **(A)** the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> **(B)** the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> **(C)** the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> **(D)** the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D).  "AEDPA also contains a tolling provision, which specifies that '[t]he time during which a properly filed application for State post-

conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.' " *Holbrook*, 833 F.3d at 615 (quoting 28 U.S.C. § 2244(d)(2)).

## B. Delayed Starts Under 28 U.S.C. § 2244(d)(1)(B)-(D)

### 1. 28 U.S.C. § 2244(d)(1)(B) and (C)

Petitioner is not relying on a new constitutional right, *cf.* 28 U.S.C. § 2244(d)(1)(C), but he does assert that state officials confiscated his legal property in February of 2014 and that he was unable to acquire copies of his legal property until the start of 2016. *See* Petitioner's brief in support of his motion for summary judgment and answer to Respondent's motion to dismiss, at 4-5 and Petitioner's affidavit in support of the motion at 1, Docket No. 10, Pg ID 2730-31, 2754.

Under 28 U.S.C. § 2244(d)(1)(B), the statute of limitations can begin to run from the date on which a state-created impediment to filing a habeas petition is removed, provided that the petitioner was prevented from filing his petition by unconstitutional state action. The record before the Court, however, indicates that Petitioner was able to convince the Michigan Court of Appeals to re-issue its decision on February 27, 2014. Later that year, Petitioner applied for leave to appeal in the Michigan Supreme Court, and in 2015, he petitioned the United States Supreme Court for a writ of certiorari. These facts indicate that the

confiscation of Petitioner's legal property did not prevent Petitioner from pursuing his rights.

Petitioner, moreover, admits that, by February 10, 2016, he had recovered enough of his missing legal property to prepare his habeas petition. *See id.*, at 5, Docket No. 10, Pg ID 2731. This left him with seventeen days in which to file his habeas corpus petition. The Court concludes that the confiscation of Petitioner's legal property by state officials did not prevent Petitioner from filing a timely habeas petition and that Petitioner is not entitled to a delayed start of the limitations period under 28 U.S.C. § 2244(d)(1)(B).

### 2. 28 U.S.C. § 2244(d)(1)(D)

Petitioner claims to have newly discovered evidence, and under 28 U.S.C. § 2244(d)(1)(D), the limitations period can run from the date on which the factual predicate of a claim could have been discovered through the exercise of due diligence. The "new" evidence here is the transcript of the state-court proceeding held on July 11, 2006. During the proceeding, the state district court addressed the matter of Petitioner's bond, and in that context, the victim's father testified that Petitioner encouraged him over the telephone to drop the charges against Petitioner.

Petitioner apparently had the July 11, 2006 transcript as early as 2010, because he stated in his post-conviction motion that state officials finally produced the transcript four years after the July 11, 2006 proceeding. Petitioner also stated in his motion that he was unable to use the transcript on direct appeal because he did not receive the transcript until after he filed his appellate brief and the deadline for adding new issues had expired. *See* Petitioner's motion for an evidentiary hearing based on newly discovered evidence, Docket No. 9-43, ¶¶ 2 and 27, Pg ID 2329, 2345. Because Petitioner discovered the factual predicate for his claims about the missing transcript before his convictions became final and before the statute of limitations began to run, § 2244(d)(1)(D) does not provide a basis for delaying the start of the limitations period in this case.

## C.  28 U.S.C. § 2244(d)(1)(A)

As Petitioner does not qualify for a delayed start to the limitations period, the statute of limitations began to run when Petitioner's convictions became final under 28 U.S.C. § 2244(d)(1)(A), that is, at "the conclusion of direct review or the expiration of the time for seeking such review." *Id.*

> For petitioners who pursue direct review all the way to [the Supreme] Court, the judgment becomes final at the "conclusion of direct review"—when [the Supreme] Court affirms a conviction on the merits or denies a petition for certiorari. For all other petitioners, the judgment becomes final at the "expiration of the time for seeking such review"—when the time for pursuing direct review in [the Supreme] Court, or in state court, expires.

11

*Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012).  A petition for writ of certiorari to review a judgment entered by a state court of last resort must be filed in the United States Supreme Court within ninety days after entry of the judgment.  Sup. Ct. R. 13.1.

Petitioner did not apply for a writ of certiorari in the Supreme Court on direct review of his convictions, and the deadline for doing so expired on October 24, 2012, ninety days after the Michigan Supreme Court denied reconsideration on direct appeal.  At that point, direct review of Petitioner's convictions concluded and his convictions became final.

The statute of limitations began to run on the following day.  It stopped running on January 24, 2013, when Petitioner filed his post-conviction motion for an evidentiary hearing in state court.[4]  At the time, the limitations period had run for 91 days (from October 25, 2012 through January 23, 2013).  The limitations period was tolled for the entire time that the motion was pending in state court, that is, until May 28, 2015, when the Michigan Supreme Court denied Petitioner's

---

[4] Although Petitioner titled his motion as a motion for an evidentiary hearing, the trial court treated the motion as a motion for new trial.  The motion therefore qualified as an "application for State post-conviction or other collateral review" that tolled the limitations period under 28 U.S.C. § 2244(d)(2).  *Moss v. Woods*, No. 13-1038 (6th Cir. Jan. 14, 2014) (unpublished).  Petitioner's other post-conviction motions for production of documents and to restart the appeal period did not qualify as applications for State post-conviction review.

12

motion for reconsideration.  *See Carey v. Saffold*, 536 U.S. 214, 219-220 (2002) (stating that an application for state collateral review "is pending as long as the ordinary state collateral review process is 'in continuance' – i.e., 'until the completion of' that process.  In other words, until the application has achieved final resolution through the State's post-conviction procedures, by definition it remains 'pending.' ").

Although Petitioner subsequently appealed to the United States Supreme Court, the limitations period is not tolled during the pendency of a petition for writ of certiorari in the Supreme Court following the denial of state post-conviction relief.  *Lawrence v. Florida*, 549 U.S. 327, 329, 332 (2007).  The statute of limitations, therefore, resumed running on May 29, 2015, the day after the Michigan Supreme Court denied reconsideration on state collateral review.  The one-year limitations period concluded 274 days later on February 26, 2016.  Petitioner filed his habeas petition over a month later on April 4, 2016.

## D.  Equitable Tolling

Petitioner urges the Court to equitably toll the limitations period on the basis that state officials withheld the July 11, 2006 transcript from him and subsequently confiscated his legal property.  The Supreme Court has "made clear that a 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been

13

pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *see also Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749-50 (6th Cir. 2011) (adopting *Holland's* two-part test for determining whether a habeas petitioner is entitled to equitable tolling).

Petitioner arguably has been diligent in pursuing his rights, but he has not shown that some extraordinary circumstance prevented him from filing a timely habeas petition. As explained above, he acquired the missing transcript before the limitations period began to run, and he acquired all or most of his confiscated legal property at least seventeen days before his habeas petition was due. The Court concludes that Petitioner is not entitled to equitable tolling of the limitations period.

**E. Actual Innocence**

Actual innocence, if proved, serves as a gateway through which habeas petitioners may pass when the impediment to consideration of the merits of their constitutional claims is expiration of the statute of limitations. *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013). The Supreme Court, however, has cautioned

14

that tenable actual-innocence gateway pleas are rare: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."

*Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).

Petitioner claims to be actually innocent of the crimes for which he is incarcerated, and he purports to have new evidence that could have been used to attack the victim's credibility at trial. The new evidence consists of the July 11, 2006 transcript wherein the victim's father testified that, during Petitioner's phone call to him, Petitioner encouraged him to drop the charges against Petitioner. *See* Petitioner's motion for summary judgment and answer to Respondent's motion, Ex. A, at 7-8, Docket No. 10, Pg ID 2764-65.

Testimony that Petitioner encouraged the victim's father to drop the charges is not new evidence. In fact, the father testified at trial that Petitioner offered him $5,000 in bond money if the victim and her parents dropped the charges against him. *See* Trial Tr. Vol. II, at 237-38, 257-58, Mar. 9, 2009, Docket No. 9-36, Pg ID 1831-32, 1851-52.

It is true that the father's trial testimony included more details about his conversations with Petitioner than the father's testimony at the July 11, 2006 proceeding. He claimed at trial that he had two conversations with Petitioner: one

15

conversation in a grocery store parking lot where Petitioner confessed to the crime and stated that the victim was not lying; and a second conversation in state district court before the preliminary examination. The father also testified that he thought he had told the prosecutor what Petitioner had said to him. *See id*. at 236-41, 255-59, Pg ID 1830-35, 1849-53.

Petitioner contends that the July 11, 2006 transcript sheds new light on what really happened:  a mere phone call between him and the victim's father. Petitioner points out that the father failed to mention on July 11, 2006 that he met Petitioner in a parking lot, that Petitioner confessed to the crime, and that Petitioner offered him money to drop the charges. Petitioner maintains that, if the July 11, 2006 transcript had been available at trial, he could have shown that the victim's story was unbelievable and that the victim's father and the prosecutor fabricated the incident in the parking lot to make Petitioner appear guilty.

The new evidence -- that the victim's father failed to mention all the details of his conversations with Petitioner when he testified in a pretrial proceeding -- is mere impeachment evidence, and "impeachment evidence . . . is a step removed from evidence pertaining to the crime itself." *Calderon v. Thompson*, 523 U.S. 538, 563 (1998). "[L]atter-day evidence brought forward to impeach a prosecution witness will seldom, if ever, make a clear and convincing showing that no

reasonable juror would have believed the heart of [a prosecution witness's] account of [the] petitioner's actions." *Sawyer v. Whitley*, 505 U.S. 333, 349 (1992).

The limited value of impeachment evidence is particularly true in this case because the victim did not waiver in her testimony and, in Michigan, " 'the complainant's testimony can, by itself, be sufficient to support a conviction' of criminal sexual conduct." *People v. Brantley*, 296 Mich. App. 546, 551; 823 N.W.2d 290, 293 (2012) (quoting *People v. Szalma*, 487 Mich. 708, 724; 790 N.W.2d 662,   671 (2010)); *see also* Mich. Comp. Laws § 750.520h ("The testimony of a victim need not be corroborated in prosecutions under sections 520b to 520g."). As the state trial court pointed out when reviewing Petitioner's post-conviction motion,

> [e]ven if the father had been impeached over whether one of the contacts with the defendant happened by a telephone call or in a grocery store parking lot[,] the value of the impeachment is not relevant to whether the other family members testified truthfully. Such impeachment has very little bearing on whether the father testified truthfully; he could have just been mistaken about what he remembered. Furthermore, the July 11, 2006 proceeding did not elicit any testimony concerning the charges to bound over. In other words, it was not a preliminary examination. While the victim's father did state under oath that the defendant contacted him to drop the charges via telephone, the testimony was elicited for the purpose of a bond motion hearing. While this prior statement could be used for impeachment purposes, the statement is not of such significance that a different result would be reached at trial had it been available. There is no factual link between the heart of the complaining witness's testimony at trial and the alleged new evidence of her father's changed testimony. *People v. Cress*, 468 Mich 678 (2003). The

17

testimony does not bear directly on whether the defendant sexually assaulted the complaining witness or suggest that the defendant was convicted wrongly. Furthermore, the alleged new impeachment evidence does not give rise to the probability that it would render a different result on retrial. *Id.*

*People v. Watkins*, No. 06-008116-01-FC, at 4 (Wayne Cty. Cir. Ct. Feb. 21, 2013), Docket No. 9-44, Pg ID 2353.

Like the state trial court, this Court is not persuaded that, in light of the July 11, 2006 transcript, no reasonable juror would have voted to find Petitioner guilty beyond a reasonable doubt. As such, Petitioner is not entitled to pass through the "actual innocence" gateway and have his claims heard on the merits.

## III. CONCLUSION

Petitioner filed his habeas petition after the statute of limitations expired. He is not entitled to a delayed start or equitable tolling of the limitations period, and his claim of actual innocence does not meet the threshold requirement for having his claims heard on the merits. The Court therefore grants Respondent's motion to dismiss, denies Petitioner's motion for summary judgment, and dismisses the habeas corpus petition as untimely. The Court denies as moot Petitioner's motions for appointment of counsel and for an evidentiary hearing.

## IV.  CERTIFICATES OF APPEALABILITY AND
## LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

Petitioner may appeal this Court's opinion and order dismissing his habeas petition only if a district or circuit judge issues a certificate of appealability.  28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When, as here, a district court rejects a habeas petition on procedural grounds without reaching the merits of the petitioner's underlying claims, the petitioner must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Reasonable jurists would not find the Court's procedural ruling debatable because the petition clearly is time-barred.  Reasonable jurists also would not find it debatable whether the petition states a valid claim of the denial of a constitutional right.  The Court therefore declines to issue a certificate of appealability.  The Court nevertheless will allow Petitioner to proceed *in forma*

*pauperis* on appeal, because an appeal from this decision could be taken in good faith.  28 U.S.C. § 1915(a)(3).

## V.  Order

For the reasons given above, the Court:

• grants Respondent's motion to dismiss (Docket No. 8);

• denies Petitioner's motion for summary judgment (Docket No. 10);

• denies as moot Petitioner's motion for appointment of counsel (document no. 2) and his motion for an evidentiary hearing (Docket No. 3);

• dismisses the habeas petition (Docket No. 1) with prejudice for failure to comply with the statute of limitations;

• declines to issue a certificate of appealability; and

• grants leave to proceed *in forma pauperis* on appeal.

s/Denise Page Hood

Dated:  February 28, 2017          Chief Judge,  United States District Court


I hereby certify that a copy of the foregoing document was served upon counsel of record on February 28, 2017, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager